[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 535.]

IN RE WIELAND ET AL.

[Cite as *In re Wieland*, 2000-Ohio-233.]

*Juvenile court—Dependent and/or neglected children—Evidence—In the absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1), 4732.19, and 2317.02(G) are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect.*

In the absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C. 4732.19 (concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client) are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect.

(No. 99-1586—Submitted May 10, 2000—Decided September 6, 2000.)

APPEAL from the Court of Appeals for Montgomery County, No. 17646.

—————————

{¶ 1} On December 22, 1996, Dayton police officers removed Lindsey and Holly Wieland from the home of their mother, appellee Laura Wieland, and delivered them to appellant, Montgomery County Children Services Board. On December 23, 1996, appellant filed complaints in the Montgomery County Juvenile Court, alleging that Lindsey and Holly were dependent and/or neglected. A shelter hearing was held that same day, and the juvenile court granted interim custody of the children to appellant.

**{¶ 2}** On February 10, 1997, an adjudicatory and dispositional hearing was held. On February 20, 1997, the juvenile court ordered that Lindsey be committed to the temporary custody of her maternal aunt, that Holly be committed to the temporary custody of appellant, and that the reunification case plan filed by appellant be incorporated as the order of the court. The case plan required appellee to submit to a substance abuse and domestic violence assessment, and to attend parenting classes.

**{¶ 3}** On November 10, 1997, appellant filed a motion for permanent custody of Holly and, on February 24, 1998, moved for permanent custody of Lindsey. Meanwhile, on February 20, 1998, the juvenile court approved and adopted an amended case plan, which noted, among other things, that appellee had "been terminated from two [substance abuse] programs this review period for noncompliance. The programs are CADAS [Center for Alcoholism and Drug Addiction Services] and the Turning Point."

**{¶ 4}** On May 10, 1998, appellee was admitted to Miami Valley Hospital with ruptured membranes. On May 11, 1998, appellee gave birth to Danielle Wieland, who, at thirty-two weeks and weighing three pounds, tested positive for crack cocaine. When appellant's motions for permanent custody of Lindsey and Holly came on for hearing on June 11, 1998, the juvenile court continued the matter in order to consolidate the dispositional hearing for all three children. On August 31, 1998, appellant filed its complaint for neglect and dependency of Danielle, seeking a preferred disposition of permanent custody. On September 18, 1998, the juvenile court ordered Danielle committed to the temporary custody of appellant on an interim basis.

**{¶ 5}** On December 24, 1998, pending the consolidated permanent custody hearing, appellant moved the court for an order admitting into evidence certain records and testimony regarding appellee's substance abuse treatment at CADAS. In so doing, appellant argued that "[t]he testimony to be presented is appropriate

2

for release since either the treatment was requested as a result of the court-approved comprehensive reunification plan or the treatment secured is relevant to this case."

{¶ 6} On January 29, 1999, the juvenile court ordered that the records shall be disclosed as requested despite appellee's objection that she had not waived the physician-patient privilege. The court found that the "privilege only extends to *voluntarily* sought treatment. When the mother submits to testing or counseling pursuant to a case-plan, such treatment is not voluntary." (Emphasis *sic*.)

{¶ 7} The court of appeals reversed the judgment of the trial court, finding that "it erred to the extent that its order allows the introduction of any communications made by [appellee] to her providers during the course of treatment." In so doing, it found that the trial court had correctly followed the law as previously set forth in its decision in *In re Smith* (1982), 7 Ohio App.3d 75, 7 OBR 88, 454 N.E.2d 171. However, the court of appeals chose to revisit its former decision, finding that "the bright-line test of voluntary-involuntary treatment set forth in *Smith* is overly simplistic." The court reasoned that the underlying justification for the creation of the privilege, which is to promote more complete and effective treatment, is present regardless of whether the patient undergoes treatment voluntarily or involuntarily. The court of appeals held instead that communications between the patient and provider are privileged when made in the course of court-ordered treatment, but not privileged when made in the course of court-ordered examinations or evaluations conducted for forensic purposes.

{¶ 8} The cause is now before this court pursuant to the allowance of a discretionary appeal.

————————

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Kirsten A. Davies*, Assistant Prosecuting Attorney, for appellant.

*Lynn G. Koeller,* Montgomery County Public Defender, and *Arvin S. Miller,* Assistant Public Defender, for appellee.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 9} Under the juvenile court's order of January 29, 1999, appellee is precluded from invoking the *physician-patient* privilege because she did not voluntarily undergo treatment. However, as aptly noted by the court of appeals, the record in this case does not reveal whether the testimony and records that appellant seeks to obtain regarding appellee's treatment at CADAS concern communications received by physicians, licensed psychologists, licensed counselors, and/or licensed social workers. Thus, in the interest of judicial economy, and because all of these providers are governed by similar statutes, we will determine at once whether the testimonial privileges governing all these providers are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect.

{¶ 10} The relevant testimonial privileges are statutory in nature, and are codified at R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C. 4732.19 (concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client). Under these sections, the respective privileges are to be given effect absent specific statutory waivers or exceptions, none of which applies to this case. No provision is made in any of these statutes that would allow for the in-court disclosure of confidential information on the basis that the treatment or service received by the patient or client was involuntary in nature, ordered as part of a journalized case plan provided in R.C. 2151.412, or is necessary or relevant to a determination of permanent custody under R.C. 2151.414. Nor is any such provision to be found anywhere in R.C. Chapter 2151 as it pertains to dependency and neglect proceedings.

{¶ 11} This court has repeatedly and consistently refused to engraft judicial waivers, exceptions, or limitations into the testimonial privilege statutes where the

4

circumstances of the communication fall squarely within the reach of the statute. In *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 673-674, the court explained:

"The question presented for review by this certification is whether the courts of Ohio should judicially create a public policy limitation upon the statutorily created physician-patient privilege which would allow otherwise clearly inadmissible evidence to be received in 'drunk driving' cases. In keeping with the constitutional principle of separation of powers, we cannot adopt such a position. Judicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy."

{¶ 12} In *In re Miller* (1992), 63 Ohio St.3d 99, 108, 585 N.E.2d 396, 404, we succinctly stated that "Ohio's physician-patient privilege statute makes no exception for civil commitment proceedings. This means that the privilege applies in the appropriate commitment situation involving a patient and his or her psychotherapist." And in *State v. McDermott* (1995), 72 Ohio St.3d 570, 572-573, 651 N.E.2d 985, 987, the court reiterated that "the General Assembly may broaden the statutory exceptions which constitut[e] waiver of the privileged communications but * * * the courts should not augment the enumerated waivers. 'The argument addressed to this court might be addressed to the legislature with persuasive power * * * but it is not for this court to make such an amendment.' [*Swetland v. Miles* (1920)], 101 Ohio St. [501] at 504-505, 130 N.E. [22] at 23."

{¶ 13} Nevertheless, appellant argues that "the purpose of the privilege is severely undermined when the patient is not voluntarily seeking help," and that "the rationale protecting communications by a parent to a physician, licensed psychologist, social worker or counselor does not apply in proceedings under R.C. Chapter 2151." Whatever persuasive force these arguments may have, this is not the appropriate forum in which to raise them. This court will not engage in

subterfuge by judicially creating a public policy limitation under the guise of statutory interpretation.

{¶ 14} Moreover, there is nothing in the interplay between R.C. Chapter 2151 and the testimonial privilege statutes that supports appellant's position. "The purpose of the [physician-patient privilege] statute is to create an atmosphere of confidentiality, encouraging the patient to be completely candid and open with his or her physician, thereby enabling more complete treatment." *In re Miller, supra*, 63 Ohio St.3d at 107, 585 N.E.2d at 403. Otherwise, the fear of disclosure "could seriously impede the patient's chances for a recovery." *Id.* at 108, 585 N.E.2d at 404. The same purpose, of course, underlies each of the testimonial privilege statutes. The same concerns are prevalent where a parent is required, under the terms of a reunification plan, to utilize medical, psychological, or other social and rehabilitative services in an effort to remedy the problems that initially caused the child to be placed outside the home so that the child can return home. See R.C. 2151.01(C), 2151.412(F)(1)(b)(i) and (H), and 2151.414(E)(1). Thus, as well stated by the court of appeals:

"In order to meet the goal of the reunification plan, the purpose underlying the statutory privilege—effective treatment—is material and significant. In other words, if a parent is fearful that any communications with her provider will not be privileged, she may not be open and truthful during treatment, thereby undermining the effectiveness of treatment and ultimately defeating the goal of remedying the reason for the removal of the child."

{¶ 15} Accordingly, we hold that in the absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C. 4732.19 (concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client) are applicable to communications made by a

parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect.

{¶ 16} For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

_____

**LUNDBERG STRATTON, J., concurring.**

{¶ 17} I reluctantly concur for the reason that the statutory privileges neither distinguish between voluntary and involuntary treatment, nor create any exception for communications made in the course of court-ordered treatment.

{¶ 18} There are strong public policy reasons in favor of creating such an exception, particularly when the safety and welfare of a child are at stake. If an expert witness who treated or consulted with a parent in court-ordered treatment reports only that the parent involuntarily attended counseling sessions, the court is left to wonder whether the counseling sessions were effective or whether the parent continues to experience problems that would impede his or her ability to parent. If no additional details of the treatment are disclosed, the court does not have material, relevant information upon which to base its decision about the child's fate and the parent's continued right to parent that child.

{¶ 19} These are serious concerns that must be weighed against the basic tenet of confidentiality, and the concern that a parent will not be candid and open while undergoing treatment for fear of later disclosure. However, I agree that these competing public policy issues should not be judicially crafted, and instead belong in the legislative forum subject to public debate.

_____