OPINION
The instant appeal emanates from a final judgment of the Juvenile Division of the Portage County Court of Common Pleas. Appellant, Peggy Jo Kyle, seeks the reversal of the trial court's decision to divest her of her parental rights in regard to David Kyle ("David"), a minor child.
Appellant is the natural mother of David, who was born in February 1988. During the first eleven years of his life, David lived solely with appellant in Portage County, Ohio. Although David's putative father, Eric St. John, also lived in that general area, David had little, if any, contact with him.
Early in his life, David began to experience psychological problems. Subsequently, David was diagnosed as having, inter alia, an attention deficit disorder and a pervasive developmental disorder. As a result of the former problem, David would behave in a hyperactive and impulsive manner. As a result of the latter, he had a limited ability to interact socially and would often engage in unusual social behavior. In addition to the foregoing, it was determined that David was mentally retarded.
David also developed one major physiological problem. In August 1995, he was diagnosed as having moderately severe asthma. As a result of this condition, David had to live in a clean environment and could not be exposed to smoke and certain animals.
In light of his various problems, David was considered a "special needs" child who required constant attention. The reasons for this were threefold. First, since David was hyperactive, there was a greater possibility that he could hurt himself. Second, since he was mentally deficient and could not concentrate for long periods, he needed special training in order to develop any basic skills. Third, the medications for his asthma and the attention deficit disorder had to be given to him on a consistent basis.
In trying to care for David, appellant periodically sought the assistance of appellee, the Portage County Department of Human Services. In each instance in which appellant asked for help, appellee's intervention did not result in any legal proceedings involving David;i.e., David was never removed from appellant's custody.
In April 1998, appellant again voluntarily requested appellee's assistance in caring for David. In this instance, appellant was experiencing problems controlling David's hyperactive behavior. Twice within a short period of time, David had jumped from a window in appellant's home. In the second of the jumps, David had seriously injured one of his heels.
This time, appellee's intervention led to a thorough investigation into the manner in which appellant cared for David. The investigation showed that appellant's home was extremely unsanitary and that she often smoked cigarettes in David's presence. It was also found that appellant was not giving David his medication as often as was required. Furthermore, appellee was informed that appellant herself was having mental problems and that she was borderline mentally retarded.
Ultimately, David was removed from appellant's custody in September 1998. The trial court then found David to be a dependent and neglected child, and gave temporary custody of him to appellee. One month later, the trial court approved a reunification plan which delineated certain requirements appellant had to satisfy before custody of her son would be returned to her. One of these requirements provided that appellant had to maintain her home in a healthy and sanitary manner. A second requirement stated that she had to attend counseling sessions for her co-dependency and anger problems.
In August 1999, appellee moved the trial court for permanent custody of David on the basis that appellant had failed to comply with the requirements of the reunification plan. Following a two-month delay, an evidential hearing was held on the motion in December 1999. During this proceeding, appellee presented the testimony of a medical doctor, two psychologists, a social worker, and a family service aide. In response to appellee's case, appellant testified in her own behalf.
In its subsequent judgment entry granting the motion for permanent custody, the trial court specifically concluded that David could not be placed with appellant within a reasonable time period and that it would be in the best interests of David if he could be placed for adoption. In support of its first conclusion, the court found that appellant had failed to satisfy the requirements of maintaining a sanitary home and seeking counseling for her psychological problems. In relation to the second conclusion, the court found that David's special needs could be satisfied only through permanent placement with appellee because appellant did not have the ability to provide a structured environment for David.[1]
In now appealing the foregoing decision, appellant has assigned the following as error:
 "The [t]rial [c]ourt erred as a matter of law when it determined that the weight and sufficiency of the evidence was such that it was shown by clear and convincing evidence that the grant of permanent custody of the child to [appellee] was in the best interests of the child.
 "The [t]rial [c]ourt erred as a matter of law when it failed to consider all alternatives proscribed by statute before granting permanent custody to [appellee].
 "The [t]rial [c]ourt erred in admitting the testimony of Dr. Frye in violation of the [a]ppellant's physician-patient privilege."
After reviewing each of appellant's three assignments, this court concludes that it is unnecessary for us to address the first two because our discussion of appellant's third assignment will be dispositive of the merits of this appeal. Specifically, we agree with appellant that the trial court's judgment must be reversed because that court should not have considered the testimony of one of appellee's primary witnesses.
The witness in question was Dr. James Frye, a psychologist who had performed an evaluation of appellant immediately before David was initially taken from her. At the beginning of his testimony, Dr. Frye indicated that he was hesitant to testify as to the results of his evaluation because he was uncertain whether the psychologist-patient privilege had been properly waived. Dr. Frye informed the trial court that, although appellant had signed a written waiver when the evaluation had taken place in July 1998, that waiver had expired and appellant had never executed a new waiver.
The trial court then asked counsel for both parties to present oral arguments on the privilege issue. As part of his argument, appellant's trial counsel expressly stated that his client did not intend to waive the privilege at that time. Upon hearing the respective arguments and asking Dr. Frye additional questions on the matter, the trial court held that the privilege was inapplicable because: (1) the evaluation had been performed at the request of appellee; and (2) appellant had been told at the time of the evaluation that its results would be submitted to the court. Dr. Frye then proceeded to testify concerning the nature of appellant's psychological problems and as to whether she was capable of caring for David.
In now arguing that the trial court's ruling was incorrect, appellant contends that her consent was necessary before the expert testimony could be admissible. That is, she asserts that even if her consultation with Dr. Frye was technically involuntary because appellee referred her to Dr. Frye, the psychologist-patient privilege was still applicable in the absence of a valid waiver.
In Ohio, the confidentiality of communications between a licensed psychologist and his patient is governed by statutory law. R.C. 4732.19
provides that communications between these individuals are considered privileged to the identical extent that similar communications between a physician and a patient are privileged under R.C. 2317.02. In turn, division (B) of the latter statute states that a physician cannot be compelled to testify in a civil action as to communications made by a patient unless: (1) the patient has given his express consent; (2) the executor of the estate of a deceased patient has given his express consent; (3) the testimony is relevant to a "medical" claim filed by a patient; and (4) the patient is deemed to have waived the privilege pursuant to R.C. 2151.421.
In applying the foregoing statutes in the context of a parental rights proceeding, the Supreme Court of Ohio has recently concluded that the courts of this state do not have the authority to recognize new exceptions to the statutory privileges. In re Wieland (2000),89 Ohio St.3d 535, 539-539. In Wieland, the mother was required to submit to a substance abuse and domestic violence assessment as part of her reunification case plan. Upon subsequently moving for permanent custody of the two children involved, the children services board requested that testimony concerning the treatment the mother had received for substance abuse be admitted into evidence at the motion hearing. The trial court held that the lack of a proper waiver did not preclude the admission of the testimony because the privilege did not cover information obtained during the course of involuntary treatment.
In concluding that the trial court's decision was erroneous, theWieland court began its analysis by noting that R.C. 2317.02(B) did not contain any exception under which the testimony in question would be admissible simply because the mother's treatment had been performed pursuant to a court order. The court also noted that, in its previous decisions, it had refused to recognize any exception to the physician-patient privilege which was not delineated in statute. Id. at 538. The court then concluded that there was no reason not to follow this precedent in this instance:
 "Moreover, there is nothing in the interplay between R.C. Chapter 2151 and the testimonial privilege statutes that supports [the board's] position. `The purpose of the (physician-patient privilege) statute is to create an atmosphere of confidentiality, encouraging the patient to be completely candid and open with his or her physician, thereby enabling more complete treatment.' In re Miller [(1992), 63 Ohio St.3d 99, 107]. Otherwise, the fear of disclosure `could seriously impede the patient's chances for a recovery.' Id. at 108, * * *. The same purpose, of course, underlies each of the testimonial privilege statutes. The same concerns are prevalent where a parent is required, under the terms of a reunification plan, to utilize medical, psychological, or other social and rehabilitative services in an effort to remedy the problems that initially caused the child to be placed outside the home so that the child can return home. * * *
"* * *
 "Accordingly, we hold that in the absence of a specific statutory waiver or exception, the testimonial privileges under R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C. 4732.19 (concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client) are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect." Id. at 538-539.
In the instant action, appellant was not required to be evaluated by Dr. Frye as part of her reunification plan; thus, to this extent, the facts of this action are distinguishable from the facts in Wieland. Nevertheless, although appellant saw Dr. Frye before David was removed from her custody, the hearing transcript before this court shows that the evaluation was performed as a direct result of a referral by appellee. Consequently, the transcript supports the conclusion that appellant went to Dr. Frye voluntarily.
More importantly, though, this court would emphasize that, pursuant toWieland, the issue of whether the psychological treatment was sought voluntarily or involuntarily is not controlling. Instead, the applicability of the psychologist-patient privilege turns upon whether a statutory waiver or exception has been invoked. In this instance, Dr. Frye stated at trial that the waiver appellant had signed on the date of the evaluation had expired. Although this waiver was not admitted into evidence, appellee did not contest the assertion that the waiver had expired. Furthermore, there was no evidence showing that any of the exceptions set forth in R.C. 2317.02(B) were applicable.
In regard to the waiver issue, appellee contends that the expiration of the executed waiver did not act to negate her consent to the release of the information; i.e. appellee maintains that appellant's consent in the waiver should be interpreted as continuing to apply as long as the investigation into her situation is ongoing. However, if we were to follow appellee's logic, this would mean that a patient would be bound to a greater extent than what the wording of the waiver states. Such logic clearly conflicts with the underlying purpose of the provisions of R.C.2317.02(B).
As an aside, this court would again note that, pursuant to Wieland, the fact that a trial court has ordered a psychological evaluation for purposes of a pending case would not render the resulting report admissible unless a statutory exception is applicable. In Wieland, the appellate court had held that, although the psychologist-patient privilege was applicable when the communications were made during court-ordered treatment, it was not applicable when the communications occurred during evaluations which had been ordered for forensic purposes. Although the Supreme Court affirmed the decision of the Wieland appellate court, it never expressly addressed the second portion of the lower court's holding. Instead, the Supreme Court stated that there was no statutory exception which allowed for the admission of confidential information because it "is necessary or relevant to a determination of permanent custody under R.C. 2151.414." Id. at 538.
In light of the specific wording of Wieland, we must conclude that a court-ordered psychological evaluation for forensic purposes is now a rather unproductive procedure in a parental rights proceeding unless the parent first consents to the disclosure of the psychological report. In our view, this holding deprives a trial court of a potentially valuable source of relevant information and changes the nature of the evidence a children services board can rely upon in seeking to obtain permanent custody. However, pursuant to Wieland, no new exception to the privilege can be invoked until it is recognized by the state legislature.
Therefore, as the communications between appellant and Dr. Frye were privileged, the trial court erred in allowing Dr. Frye to testify. The question before this court then becomes whether this error was prejudicial.
Consistent with the requirements of R.C. 2151.412, the trial court predicated its divestiture decision upon two findings: (1) custody of David could not be given back to appellant within a reasonable time; and (2) it would be in the best interests of David if he could be placed for adoption. As to the first finding, our review of the hearing transcript readily establishes that, even if Dr. Frye's testimony is not considered, there was still significant evidence supporting this finding. The testimony of both the social worker and the family service aide assigned to appellant's case showed that appellant had failed to comply with two requirements of the reunification plan; i.e., she had failed to maintain her residence in a sanitary condition and seek counseling for her anger and co-dependency problems.
However, the same analysis cannot be made as to the trial court's "best interests" finding. In support of this aspect of its decision, the trial court stated, in its judgment, that the paramount concern in this case was that David needed to be placed in a secure environment. Although this statement was based in part upon the fact that David had special needs and problems, it was also based upon the fact that appellant did not have the ability to deal with those special needs and problems.
In its judgment, the trial court made extensive findings regarding the testimony of Dr. Frye. Specifically, the trial court found that, according to Dr. Frye, appellant had psychological problems which made it difficult for her to understand her own emotions, engage in interpersonal contact, and manage her own impulses. Citing to Dr. Frye, the trial court further found that, when combined with the fact that appellant was borderline mentally retarded, these psychological problems seriously limited appellant's parenting ability. In light of this, the court ultimately concluded that appellant could not provide proper care for David.
Our review of the entire hearing transcript indicates that only one other witness addressed appellant's parenting ability. The family service aide stated in her testimony that she believed that caring for a disabled child was too difficult for appellant.
However, in stating the basis for its decision in its judgment, the trial court never cited to the family service aide's statement. Instead, in making its findings regarding appellant, the trial court relied solely on Dr. Frye's testimony.
Finally, this court would note that the trial court stated during the hearing that it was evident that David and appellant still loved each other. Despite this, the trial court still concluded that the divestiture of appellant's parental rights was warranted. In light of this conclusion, it follows that the fact that appellant was unable to care for David probably played a critical role in the trial court's decision. Stated differently, although we cannot exclude the possibility that the outcome would have been the same, we also cannot say definitively that the trial court would have reached the same determination on the "best interests" issue if it had not heard Dr. Frye's testimony.
Accordingly, this court holds that appellant was prejudiced as a direct result of the trial court's error in allowing Dr. Frye to testify. Appellant's third assignment of error in this appeal has merit.
Pursuant to the foregoing analysis, the judgment of the trial court is reversed, and the action is hereby remanded for further proceedings consistent with this opinion. Specifically, upon remand, the trial court shall reconsider all of the evidence presented during the evidential hearing of December 17, 1999, except for the testimony of Dr. James Frye and any related exhibits, and then render a new ruling on appellee's motion for permanent custody of David Kyle.
 _____________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., O'NEILL, J., concur.
[1] Although not relevant to the merits of this appeal, it should be noted that, as part of its final judgment, the trial court also divested the putative father, Eric St. John, of his parental rights in regard to David because the evidence had demonstrated that he had abandoned the child.