JOURNAL ENTRY AND OPINION
Appellant Adriene Buford appeals from the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, to grant permanent custody of three of her children to the Cuyahoga County Department of Family and Children Services (CCDCFS). The appellant's children were adjudicated neglected and she appeals from the court's disposition which places the children in the permanent custody of CCDCFS.
The appellant's two youngest children, Elijah Buford (dob 3/5/99) and Robert Anderson (dob 10/31/97) were removed from the appellant by CCDCFS shortly after birth. Alexis Buford (dob 6/11/95) was first removed from the appellant's care when she was five months of age. Alexis was reunified with her mother in November 1996 and remained with her mother until she was again removed in October 1997. The appellant has three older children who were previously removed from her custody. Two of the older children have been adopted and one is now emancipated. After the dispositional hearing, conducted over three days on January 4, 2000, March 2, 2000, and May 23, 2000, the court issued a separate order as to each child on June 15, 2000, which granted permanent custody of Elijah, Robert, and Alexis to CCDCFS.
The trial court's orders stated in pertinent part:
 The Court finds that the allegations of the motion have been proven by clear and convincing evidence. Upon further consideration, the Court finds by clear and convincing evidence that it is in the best interest of the child to grant Permanent Custody to the Cuyahoga County Department of Children and Family Services and the child is not abandoned or orphaned.
 The court finds that there are no relatives of the child whom are able to take permanent custody.
 The Court further finds that the child cannot be placed with the parent(s) within a reasonable time or should not be placed with the parent(s) for the following reasons:
 The child has been in temporary custody of a public children's agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period.
 The Court further finds that following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents has (sic) failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
The first witness in the disposition hearing was Patrick Nicolino, the clinical coordinator of the Witness Victim Service Center of Cuyahoga County. Mr. Nicolino stated that Ms. Buford began domestic violence counseling in September of 1998 and did not finish the twelve-week program until August 1999. The appellant had limited interaction with the counseling group and at times she became hostile, upset and angered. Ms. Buford did not believe she needed the services of the program because she saw herself as very stable. This inability to comprehend her difficulties leads Mr. Nicolino to question her ability to care for herself or her children. Mr. Nicolino stated that while Ms. Buford may be able to care for herself, the added stress of the children causes him major concerns in the maintaining of sobriety. (1/4/2000 T. 15). Mr. Nicolino does not believe that Ms. Buford has the ability to take the information learned in the program, implement it, and maintain a relationship that is healthy. The witness expressed concern that someone who takes eleven months to complete a twelve-week program is not focused on reunification with her children. Despite the fact that the appellant had maintained sobriety for eighteen months, Mr. Nicolino believes that reunifying the appellant with her children would place the children at risk.
Jacqueline Campbell, the CCDCFS social worker assigned to this case in 1998, stated that when she received this case she repeatedly attempted to contact the appellant. The appellant did not return her telephone calls for six weeks. Visitation for the appellant was limited to the Metzenbaum Center. Ms. Campbell was trying to contact the appellant to find out why she repeatedly missed the scheduled visitation. However, the children's father was permitted to have the children unsupervised for eight-hour time periods. He had been instructed not to permit the appellant to visit with the children during his visitation. CCDCFS became aware that the father was violating this prohibition because when he returned the children to foster care the appellant was also present.
Ms. Campbell testified that the appellant completed a parenting program in March 1998, but that the subsequent psychological evaluation indicated that more support was needed. After some discussion with Ms. Buford, it was agreed that she would enroll in a parenting class at the Clement Center, the place where she was receiving counseling for her chemical dependency. Apparently this parenting class was never held. When Ms. Campbell referred the appellant to another program, the appellant objected, stating that she had already completed parenting classes. This continued until June 1999 when the appellant finally conceded to a sixteen-week class. At the time of the January 4, 2000 hearing, these classes were not completed.
Ms. Campbell stated that the case plan required successful completion of drug treatment, stable housing, parenting classes and domestic violence counseling. Robert Anderson, the father of Alexis and Robert, has stated to Ms. Campbell that the children should not be placed with the appellant because they would not be safe. In September 1999, the appellant stated to Ms. Campbell that the children should not be returned to her all at one time. She would first like to be reunified with Elijah and if that did not go well, the agency could have custody of all of the children. The appellant's concern was that she might relapse into substance abuse. In the opinion of Ms. Campbell, based on her experience as a social worker, it is in the best interest of the children to have permanent custody granted and to leave the children in their current foster homes.
Yolanda Anderson was the CCDCFS social worker assigned to the Buford children after Ms. Campbell. The appellant is currently in anger management counseling. The issues which led to this counseling have not been resolved because the appellant is still having outbursts. The appellant has finished her parenting classes. All of the children are well integrated into their respective foster families and the interaction between the children and their families is the same as in any other normal family. Ms. Anderson testified that in her opinion the children should remain in their current foster homes. Ms. Anderson believes the children would be at risk based on her observation of the appellant's interaction with other people and her inability to control her anger.
Robert Anderson, the appellant's ex-husband and the father of Robert and Alexis, testified as to the history of his relationship with the appellant. He stated that there was drug abuse, a lot of stealing, lying, you know. The violence that was in it the fighting, the arguing, you know. (March 2, 2000 T. 123). Alexis was present during some of these instances. In his opinion, the children should be adopted by their foster mother. Mr. Anderson is concerned for the safety of the children. He recognized that he is not a responsible parent and admitted that his past domestic violence with the appellant led to a term of incarceration. Mr. Anderson does not want his children exposed to domestic violence and drug abuse and he does not want them in a dangerous situation. In essence, Mr. Anderson does not want his children to live through another cycle of substance and domestic abuse.
Dr. Anuszkiewicz performed a psychological evaluation of the appellant at the request of CCDCFS. This evaluation occurred on September 1, 1998. Prior to trial the appellant revoked her waiver which would have permitted Dr. Anuszkiewicz to testify under R.C. 2317.02. The court overruled the appellant's objection and permitted Dr. Anuszkiewicz to testify regarding his findings.
Esther Macklin, the foster mother for Alexis and Robert, testified that she first became involved in 1995 when Alexis, then age five months, was placed with her. Alexis remained with her from November 1995 until November 1996. At that time Alexis was reunified with her mother. Ms. Macklin and Ms. Buford remained in touch and Ms. Macklin became Alexis' godmother. Alexis was returned to Ms. Macklin in October 1997 and Robert was placed with Ms. Macklin in December 1997. The children were, respectively, two and one-half years of age and five weeks of age. The relationship between the Macklins and the children is strong and healthy. The Macklins are desirous of adopting both children. Audrey Danley, a resource manager at CCDCFS, testified that she visits the Macklin home on a monthly basis. She testified that both Alexis and Robert love the Macklins and the Macklins love them.
Mrs. Macklin testified that during the time Alexis was permitted to visit with her mother at the Metzenbaum Center, Alexis would defecate and urinate on herself. Alexis also had severe temper tantrums and at one point was removed from her day care center. Since visitation with the appellant ceased, these behaviors have ceased as well. Alexis, who is confused and afraid, is in counseling.
Additionally, the Macklins take steps to ensure that a relationship is also maintained with Elijah and two of the appellant's older children who all reside with the Scruggs family. The two older children have been adopted by Mr. and Mrs. Scruggs. The families make it a point to provide opportunities for the children to spend time together.
Crystal Scruggs testified that she became Elijah's foster mother on March 6, 1999. She has adopted two older siblings who were placed in her home in 1993 and she is willing to adopt Elijah. The children love each other and have bonded. Ms. Scruggs also testified as to the family outings with the Macklin family.
The appellant presented the testimony of Rebecca Snider, a clinical nurse specialist in mental health nursing. Ms. Snider is employed at the Clement Center and her duties include counseling and medication management for patients with a mental health diagnosis. The appellant was referred to the chemical dependency program at Clement Center so that she could receive psychotherapy and medication. The appellant was diagnosed with depression and post-traumatic stress disorder. She was prescribed first Prozac and then Zoloft. Ms. Snider testified that after approximately ten months on medication, the medication was discontinued.
Ms. Snider testified that the appellant has made progress in terms of her treatment for post-traumatic stress disorder. The appellant has begun to see that working on her case plan is not enough, but that she must accept responsibility for her past and work on her issues. The appellant's attitude underwent a significant change as she gained insight to her problems. Ms. Snider declined the opportunity to speak to the appellant's ability to parent, stating that she is not an expert. Ms. Snider reiterated that the appellant has made incredible progress in her ability to be a parent, and that, as a person, the appellant has made incredible progress in her ability to handle and cope with the realities of her life.
Lisa Bandsuch is the appellant's case manager at the Murtis Taylor Multi-Service Center. The agency is the appellant's payee for purposes of her Social Security Disability (SSI) income. Over the last six years Ms. Bandsuch has monitored the appellant's psychiatric services, monitored her compliance with psychiatric and counseling services, and has assisted her with money management. The appellant is not currently seeking a psychiatrist at Murtis Taylor. The appellant's SSI check is paid to Murtis Taylor and the agency, through Ms. Bandsuch, disburses the money to the appellant. The appellant's housing and clothing and other personal needs are ensured in this way. Instead of every week, the appellant now receives checks twice a month. The goal is for the appellant to become her own payee and toward that end she is learning how to handle larger sums of money over time. The appellant is definitely making progress in managing her money.
The appellant has housing through a program called Shelter Care Plus. The appellant was homeless for a time, but has now had stable housing for a year. Ms. Bandsuch recommended to the court that the appellant, with close monitoring, should be given the chance to parent her children.
The appellant's cousin, Dianne Lee, filed a motion for legal custody and testified that she is willing to provide a home for Alexis. She is currently a foster mother for several children and works third shift. She does not have room for Elijah and Robert and caring for a baby would be difficult. She has only seen Alexis four or five times and has not seen her since approximately 1997.
The appellant testified on her own behalf. Although she is currently selling Avon, the appellant is registered at Cuyahoga Community College with the goal of becoming a chemical dependency counselor. She has completed a four-month parenting class. At parenting classes she learned that `whooping a child' is not necessarily the right way to discipline a child, instead you can take television privileges away or institute a time out. She also attends anger management classes. The appellant denied threatening Mrs. Macklin. The appellant had an amicable relationship with Mrs. Macklin until she became concerned with the way Mrs. Macklin disciplined Alexis. At one point the appellant called the CCDCFS hotline for abuse. She also filled out an incident report at the Metzenbaum Center because during two or three separate visitation sessions Alexis defecated on herself.
The appellant attends five Alcohol Anonymous (AA) meetings a week and attends various AA events throughout the year. She volunteers at Rosary Hall for three hours a week. Ms. Buford testified that she agreed to have sex with Mr. Anderson in order to participate in his visits with the children. She maintained that she definitely wants to be reunified with all of her children.
On cross-examination, Ms. Buford testified that she is in anger-management classes, but has not attended classes in the last few weeks. She could not recall the name of the counselor. She attended the four-month parenting program which began in June of 1999. When asked if she finished on July 20, 2000, she was unable to remember when she finished the program. At the very least, the program was not completed as of the beginning of the trial in January 2000.
The guardian ad litem was given an opportunity to question the appellant. Through this questioning it became clear that Ms. Buford recognizes that much of her daily time is spent working on her own issues. Ms. Buford has the support of AA to maintain sobriety, she has a payee at Murtis Taylor to assist with finances and housing, she has counseling and anger management. When asked how she planned to integrate the children back into her life, the appellant merely asserted that because she is sober and treating her disease, she sees no problem in raising her children.
At the conclusion of the hearing, the court commended the appellant for her hard work. However, the court went on to say:
 I have to decide what's in the children's best interest. And what I see are kids who have essentially not been in your custody. Two of them virtually have no time at all, and Alexis for very brief periods of time.
 They are both in homes that I think they consider to be their families. They are with siblings. Both families want to adopt. I look at all the previous times you tried to get your life together, and they haven't worked the reunification that didn't work, your relapses, claims that you made unsubstantiated against the foster family, denials of statements that you claim you never made to social workers and others. I look at the incidents that we experienced here over the course of this trial. Both your outburst in court, your apparent outburst outside of court, my need to make a decision terminating your visitations even during the course of the trial. I can't see where keeping the kids in limbo any longer would serve their interest, and that's what it would be. Because certainly you're not in the position to take the children now. So how long would be (sic) wait, and would that happen in six months, or a year, or eighteen (18) months? Children deserve permanency. They need to know that where they are is their home, and have a sense of permanency. And I can't take that away from them now. And so I find it to be in their best interest to grant permanent custody to the Department of Children and Family Services.
(May 23, 2000 T.148)
At the end of the hearing held on January 4, 2000, the appellant had an outburst in the courtroom. As a result of this outburst the appellant was found to be in contempt of court. Additionally, as a result of this outburst, the court issued a restraining order ceasing the appellant's visitation with the children. At the March 2, 2000, hearing, Ms. Macklin testified that subsequent to the January 4, 2000 hearing the appellant threatened her by stating don't forget, I know where you live. (March 2, 2000 T. 84).
The appellant asserts three assignments of error.
The first assignment of error:
 THE JUVENILE COURT'S DETERMINATION THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE OF FACTORS ENUMERATED IN R.C. 2151.414(E) AS REQUIRED.
The appellant asserts that in rendering its dispositional order of permanent custody, the court focused on irrelevant factors and failed to consider other more relevant factors such as the appellant's completion of her case plan and the length of her sobriety.
Permanent custody must be based on a finding that the child cannot be placed with one of the parents within a reasonable time, or should not be placed with either parent, and that permanent custody is in the best interest of the child. R.C. 2151.141(B)(2). It is clear that permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist. In re William S. (1996), 75 Ohio St.3d 95. Here, the trial court's journal entry reflects that the court terminated the appellant's parental rights under R.C. 2151.414(E)(1):
R.C. 2151.414(E)(1) states as follows:
 (E) In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Both the best interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent. In re Awkal (1994), 95 Ohio App.3d 309, 315. Additionally, this court held in Awkal that:
 R.C. 2151.414(D) is written broadly and requires the juvenile court judge to consider all factors that are relevant to the best interest of the child. The purpose of a far-reaching inquiry is to allow the judge to make a fully informed decision on an issue as important as whether to terminate parental rights, privileges and responsibilities. The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Moreover, the knowledge the juvenile court gains at the adjudicatory hearing through viewing the witnesses and observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony cannot be conveyed to a reviewing court by a printed record. * * * Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. Id. at 316. (Citations omitted.)
In the case sub judice, the trial court heard testimony from various witnesses who have been involved in counseling or assisting the appellant. Focusing first on the best interest of the children, it is noteworthy that both social workers testified that the children were all in secure and stable placements with families who are able to, and willing to, meet the needs of the children. The children have bonded with their respective families and are being given a chance to bond with each other. Alexis and Robert are together as siblings and Elijah is placed with two other siblings. Both Robert and Elijah were placed as infants. Alexis was removed from the appellant custody, reunified with the appellant for one year, and then removed again when the appellant relapsed into substance abuse.
Mr. Nicolino testified that, notwithstanding the appellant's current sobriety, reunifying the children with the appellant would place the children at risk. He noted that the appellant has completed domestic violence counseling, but testified that the appellant required eleven months to complete the sixteen-week program. Mrs. Macklin testified as to the anger the appellant has exhibited towards her after one of the hearings. The appellant's ex-husband testified that he wants his children to be safe and that they would be in danger if returned to the appellant.
Ms. Campbell testified that based on her experience, it is in the children's best interest to be placed in permanent custody. While the appellant has completed two parenting classes, Ms. Campbell testified the appellant had not finished the second set of classes by the beginning of the first permanent custody hearing. The appellant has stable housing and is able to manage her money only because she receives services from the Murtis Taylor Multi-Service Center. The agency as the payee for the appellant's SSI has ensured that the appellant's basic needs are met. Ms. Anderson, the current social worker, testified that based on her observations of the appellant's interactions with others, that the children would be at risk. The appellant continues to have outbursts of anger and is enrolled in ongoing anger-management classes.
Even the testimony of the witnesses for the appellant did not entirely support the position that the children should be reunified with the appellant. Ms. Snider testified regarding the appellant's depression and her progress in her treatment. However, Ms. Snider declined to comment on the appellant's ability to parent. Ms. Bandsuch did testify that the appellant should be given a chance, but her testimony revealed that it is she who monitors the appellant's money from SSI and sees that she has her basic needs met. The appellant is still in need of these services and is not ready yet to be independent.
It is clear that the appellant has made great strides in her life, and like the trial court, this court applauds her progress. The appellant at the moment is spending her time and energy recovering from her past and is not able to articulate how she could integrate the children into her present life. When considering all of the evidence in toto, the trial court did not abuse its discretion in finding that there is clear and convincing evidence that the children should be placed in the permanent custody of CCDCFS.
The first assignment of error is overruled.
The second assignment of error:
 THE JUVENILE COURT ERRED IN GRANTING PERMANENT CUSTODY OF ELIJAH BUFORD WHERE CCDCFS FAILED TO MAKE DILIGENT EFFORTS TO PREVENT HIS REMOVAL.
The appellant argues that the appellee failed to present clear and convincing evidence that CCDCFS diligently attempted to prevent the removal of Elijah from the appellant at the time of his birth. The appellant states that at the time of Elijah's birth, she had been sober for eight months, had stable housing, and had discontinued the abusive relationship with Mr. Anderson.
The record demonstrates that the appellant had not completed her parenting classes as of January 2000, well after the birth of Elijah. At the time of the hearings, the appellant was still unable to meet her basic needs without the assistance provided by Murtis Taylor. And finally, prior to the last hearing date, the appellant enrolled in anger management classes due to continued outbursts. It must be remembered that the trial court held the appellant in contempt of court after witnessing one such outburst. There was clear and convincing evidence that the appellant had not completed her case plan even at the time of the hearings. The trial court did not err in finding that CCDCFS had undertaken reasonable and diligent efforts to assist the appellant to remedy the problems which led to removal.
The second assignment of error is overruled.
The third assignment of error:
 THE JUVENILE COURT ERRED IN ALLOWING THE TESTIMONY OF DR. ANUSZKIEWICZ IN VIOLATION OF R.C. 2317.02(B)(1).
The appellant cites to In re Wieland (2000), 89 Ohio St.3d 535
and argues that the testimony of Dr. Anuszkiewicz was improperly admitted over objection because she had revoked her consent to the disclosure of privileged information.
In Wielandthe Supreme Court noted if a parent is fearful that a communications with a service provider will not be privileged, the parent may not be open and truthful during treatment. In this way the effectiveness of treatment is undermined and the goal of remedying the reason for the removal of the child would be ultimately defeated. The court in its holding stated:
 Accordingly, we hold that in the absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C. 4732.19 (concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client) are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect.
In the matter at hand, CCDCFS asserts that the evaluation by Dr. Anuszkiewicz was forensic in nature and not for purposes of treatment and therefore the holding in Wieland is inapplicable. Two other courts of appeals have specifically rejected this argument. See In re Daywalt (March 19, 2001), Stark App. Nos. 2000CA332, 2000CA355, unreported and In re Kyle (Dec. 1, 2000), Portage Appl. No. 2000-P-0014, unreported. The court in Daywalt concurred in the reasoning set forth in Kyle and noted that the Kyle court concluded that in light of the specific wording of Weiland, the results of court-ordered psychological evaluations for forensic purposes are privileged unless a parent first consents to the disclosure of the psychological report. While the Kyle court recognized that its holding deprived a trial court of a potentially valuable source of relevant information, and changed the nature of the evidence a children's services board can rely on in seeking to obtain permanent custody, no new exception to the privilege may be invoked until it is recognized by the legislature. The Weiland decision specifically focuses on the lack of a statutory exception to the privilege. Regardless of whether an evaluation is forensic in nature, rather than for purposes of treatment, if the evaluation is part of a reunification plan, in the absence of a specific statutory exception or a waiver by the parents, the information conveyed is privileged.[1]
This court finds the reasoning set forth in Daywalt and Kyle to be persuasive. The trial court erred in admitting the evidence of Dr. Anuszkiewicz once the appellant had revoked her waiver of her statutory privilege. However, in light of the clear and convincing evidence heard by the trial court which supports its decision to award permanent custody of the children to CCDCFS, this court finds the error of the trial court to be harmless.
The third assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _______________________ SWEENEY, JAMES D., P.J.:
PATRICIA A. BLACKMON, J., CONCURS; ANNE L. KILBANE, J., CONCURS IN JUDGMENT ONLY.
[1] However, see also In re Myers (March 15, 2001), Tuscarawas App. Nos. 2000AP110071, 2000AP110073 and 2000AP11008, unreported, which held that subsequent change to R.C. 2151.3514(B) abrogates privilege for drug and alcohol screening. Additionally, effective in April 10, 2001, the legislature enacted House Bill 508 which amended R.C. 2317.02(B)(1) to permit the testimony of providers of treatment or services ordered as a part of the case plan.