In re Jones; The State of Ohio, Appellee; Nye, Appellant.

[Cite as *In re Jones,* 99 Ohio St.3d 203, 2003-Ohio-3182.]

(No. 2002–0176—Submitted February 26, 2003—Decided July 2, 2003.)

Moyer, C.J.

{¶ 1} Zachary Jones is the minor son of appellant, Karen Nye. Karen is also the mother of three daughters, two of whom live with their father, Zachary's

stepfather, Robert Nye. In January 2001, Franklin County Children Services ("FCCS") filed a complaint in the Franklin County Court of Common Pleas, Domestic Relations and Juvenile Division, alleging that Zachary, who at that time was living with his mother, was a dependent child in need of services. FCCS sought custody, as did Zachary's stepfather.

{¶ 2} FCCS had become involved with the Nyes during earlier dependency adjudications concerning the daughters. Robert was eventually granted temporary legal custody of the girls.

{¶ 3} As part of the earlier proceedings, in February, 2000, a licensed independent social worker, Sharon Pickel, had begun counseling sessions with the Nye sisters. Ultimately Robert, Karen, and Zachary joined the counseling sessions. Pickel conducted an individual therapy session with Karen on September 25, 2000. Pickel met with Karen, Robert, and two FCCS employees on October 3, 2000, to "talk about the ground rules for family therapy." Karen attended ten counseling sessions conducted by Pickel, eight of which were family sessions.

{¶ 4} Karen's participation in counseling was part of a case plan approved by the court in the dependency proceedings concerning the daughters. The case plan required Karen to undergo counseling, one goal of which was to improve her parenting skills.

{¶ 5} After FCCS filed its complaint concerning Zachary, the court awarded temporary custody of him to Robert and ordered a mental health assessment of Karen, who was restricted to supervised visitation. Accordingly, George Pfaff, a licensed independent social worker, thereafter interviewed Karen.

{¶ 6} On February 2, 2001, the court held a hearing to consider Karen's request for broader visitation, and Pickel was the sole witness. Over Karen's objection, Pickel divulged some of the contents of her conversations with Karen during counseling. The trial court overruled Karen's motion that Pickel's testimony be stricken as violating "client/clinician privilege." In denying Karen's objection to Pickel's testimony, the court found that "Mrs. Nye was engaged with Miss Pickel pursuant to court order and only to the extent to be involved with family counseling as it was instant to the children's counseling." The court found that a therapist-client relationship had not existed between Karen and Pickel because Karen's counseling sessions with Pickel were not for purposes of treatment. Based on Pickel's testimony, the court ordered that visits between Zachary and his mother continue to be supervised.

{¶ 7} At the conclusion of the February 2 hearing, the guardian ad litem noted that the court had ordered psychological testing on Karen and Robert in the case involving the Nye sisters and asked the court to take judicial notice of "everything in the court file from the other case and incorporate it in this case so that Court [sic] doesn't have to spend money on a psychological for these people."

{¶ 8} On February 22, 2001, Pfaff was called as a witness at Zachary's dependency hearing. He immediately asked the court to consider whether the privilege provided by R.C. 2317.02(G) applied to limit his testimony. Karen, through counsel, refused to waive any privilege. The court ruled that Karen's mental health assessment occurred pursuant to a court order and was not for purposes of treatment. Therefore, a privileged, therapeutic relationship had not been established between Karen and Pfaff. Pfaff then testified that Karen suffered from adjustment disorder and posttraumatic stress disorder and showed symptoms of borderline personality disorder and histrionic personality disorder. His assessment was based on a two-and-one-half-hour interview at which Nye provided him a history and responded to his questions.

{¶ 9} Dr. John H. Mason, a psychologist, also appeared as a witness at Zachary's dependency hearing. He testified that in early 2000, pursuant to the court's referral, he had evaluated both Karen and Robert in connection with the court proceedings concerning their two daughters. He recounted that he had performed his standard evaluative process, including a clinical interview and the administration of standardized psychological tests. He testified that the results of his testing suggested that Karen might possess a personality disorder and that she should not be the custodial parent. Dr. Mason further testified that his only professional contact with either Nye was his conducting the psychological evaluations ordered by the court.

{¶ 10} During the last day of the dependency hearings, Pickel's testimony from the visitation hearing was incorporated into the record by agreement. Mason's reports were admitted into evidence. The court declared Zachary a dependent minor pursuant to R.C. 2151.04(C) and granted custody to FCCS.

{¶ 11} Karen appealed, arguing that the trial court erred in admitting the therapists' testimony and report in the absence of any waiver of the testimonial privilege.

{¶ 12} The court of appeals affirmed the judgment of the trial court, holding that a therapist-client privilege applies only to communications "made in the course of treatment." It thereafter certified the cause to this court, finding that its judgment conflicted with the decisions of the Stark County Court of Appeals in *In re Daywalt* (Mar. 19, 2001), Stark App. Nos. 2000CA332 and 2000CA355, and *In re Layne* (June 25, 2001), Stark App. No. 2001CA00104, 2001 WL 1773763; and the Portage County Court of Appeals in *In re Kyle* (Dec. 1, 2000), Portage App. No. 2000–P–0014, 2000 WL 1774155. It certified this question to us for resolution: "In dependency/neglect cases, do the statutory privileges set forth in former R.C. 4732.19 and R.C. 2317.02(G) apply to the reports and/or testimony of a psychologist and a licensed independent social worker when such testimony and

report were generated for forensic purposes only and do not concern communications made in the course of treatment?"

{¶ 13} We answer the certified question in the negative, and hold that statements made by an individual to a licensed psychologist or licensed independent social worker in the course of an examination ordered by a court for forensic purposes are not communications received "from a client in that relation," R.C. 2317.02(G)(1), and are not protected as privileged communications pursuant to R.C. 4732.19 and former R.C. 2317.02, 147 Ohio Laws, Part III, 4686, 4702, as in effect prior to April 10, 2001, the effective date of 2000 Sub.H.B. No. 506. A psychological examination is considered to be for forensic purposes when it is ordered to assist the court in determining facts or making conclusions of law. Individuals interacting with a professional in such an examination are not clients of the professional for purposes of the privilege statutes.

{¶ 14} At the time of the hearings, former R.C. 2317.02 [1] provided:

{¶ 15} "The following persons shall not testify in certain respects:

{¶ 16} "* * *

{¶ 17} "(B)(1) A physician * * * concerning a communication made to the physician * * * by *a patient in that relation* or the physician's * * * advice to a patient * * *.

{¶ 18} "* * *

{¶ 19} "(G)(1) * * * [A] person licensed under Chapter 4757. of the Revised Code as a professional clinical counselor, professional counselor, social worker, or independent social worker, or registered under Chapter 4757. of the Revised Code as a social work assistant concerning a confidential communication received from *a client in that relation* or the person's advice *to a client* * * *." (Emphasis added.) 147 Ohio Laws, Part III, 4686, 4702 and 4707–4705.

{¶ 20} R.C. 4732.19 states:

{¶ 21} "The confidential relations and communications between a licensed psychologist * * * *and client* are placed upon the same basis as those between physician and patient under division (B) of section 2317.02 of the Revised Code." (Emphasis added.)

---

1. Since April 10, 2001, the effective date of 2000 Sub.H.B. No. 506, the relevant statutes provide that licensed independent social workers and licensed psychologists may testify in a civil action concerning court-ordered treatment or services received by a patient if the court-ordered treatment or services were ordered as part of a case plan journalized under R.C. 2151.412 or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse of temporary or permanent custody proceedings under R.C. Chapter 2151. See R.C. 2317.02(G)(1)(g) and 2317.02(B)(1)(b) as applied to licensed psychologists pursuant to R.C. 4732.19.

{¶ 22} Accordingly, these statutes provide a privilege only for communications made to a professional incident to a counselor-client or doctor-patient relationship.

{¶ 23} In *In re Wieland* (2000), 89 Ohio St.3d 535, 733 N.E.2d 1127, syllabus, we held that in the "absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C. 4732.19 (concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client) are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect."

{¶ 24} In *Wieland,* the mother of alleged dependent children was ordered to submit to a substance abuse and domestic violence assessment and to attend parenting classes. We observed that " 'the purpose of the [physician-patient privilege] statute is to create an atmosphere of confidentiality, encouraging the patient to be completely candid and open with his or her physician, thereby enabling more complete treatment.' " Id. at 538–539, 733 N.E.2d 1127, quoting *In re Miller* (1992), 63 Ohio St.3d 99, 107, 585 N.E.2d 396. Similarly, we noted that the "same concerns are prevalent where a parent is required, under the terms of a reunification plan, to utilize medical, *psychological,* or other social and rehabilitative services in an effort to remedy the problems that initially caused the child to be placed outside the home so that the child can return home." (Emphasis added.) Id. at 539, 733 N.E.2d 1127.

{¶ 25} In *Wieland* this court affirmed the judgment of the court of appeals. In its opinion in that case, the court of appeals cogently wrote as follows:

{¶ 26} "Whenever a court orders a parent to undergo a psychiatric examination or substance abuse evaluation and treatment for purposes of a child custody case, the parent is required to submit involuntarily to the examination, evaluation and treatment. The mere fact of involuntariness, however, should not end the inquiry. Instead, an examination of the purpose and the nature of the professional help sought is also necessary.

{¶ 27} "In regard to a court-ordered examination or evaluation, the parent is being required to consult the expert for forensic purposes. The physician is not examining or treating the patient to alleviate medical complaints or substance addictions. Instead, the physician is performing a forensic evaluation for the purpose of helping the court to determine the best course of action. In this case, no privilege attaches. * * * Likewise, we conclude that when a psychiatric examination or substance evaluation is ordered by a court in a child custody case for forensic purposes, the privilege is inapplicable. However, when the parent is also required to undergo treatment, the reason underlying the psychologist-

patient privilege applies. As previously stated, the purpose of the privilege statutes is to 'create an atmosphere of confidentiality, encouraging the patient to be completely candid and open with his or her physician, thereby enabling more complete treatment.' *In re Miller* (1992), 63 Ohio St.3d 99, 107, 585 N.E.2d 396. Furthermore, the purpose of reunification case-plans is to reunify the parent and child by remedying the reason for the removal of the child from the home. See R.C. 2151.414(E)(1). In order to meet the goal of the reunification plan, the purpose underlying the statutory privilege—effective treatment—is material and significant. In other words, if a parent is fearful that any communications with her provider will not be privileged, she may not be open and truthful during treatment, thereby undermining the effectiveness of treatment and ultimately defeating the goal of remedying the reason for the removal of the child. On the other hand, matters that do not involve communications between the provider and the patient-client, *e.g.*, a summary of attendance, will not be protected by the privilege.

{¶ 28} "We find this type of situation closely akin to that addressed by the Ohio Supreme Court in *In re Miller, supra*. Although *Miller* involved an involuntary commitment in which the action was commenced for the benefit of the patient, the court found that the privilege afforded by R.C. 2317.02 covered any treatment provided to the individual being committed. Id., 108–109, 585 N.E.2d 396. Similarly, an order for substance abuse and psychological treatment for a parent in a custody determination is intended to benefit the parent, directly, by helping to resolve the problems requiring removal of the child from the home. The parent's treatment may, of course, ultimately benefit the child by permitting reunification, but that is an indirect benefit of the treatment, and is equally dependent upon the treatment's effectiveness, which the statutory privilege is intended to promote." *In re Wieland* (July 9, 1999), Montgomery App. No. 17646, 1999 WL 961154.

{¶ 29} We find this analysis compelling and fully consistent with our judgment in *Wieland*. We follow it and specifically distinguish between court-ordered psychological assessments for forensic purposes and psychological treatment or counseling ordered for the purpose of assisting an individual in recognizing, addressing, and changing detrimental behaviors.

{¶ 30} In applying this distinction to the case at bar, we conclude that the privilege statutes asserted here did not apply to bar the testimony of Pfaff and Mason. Both of these professionals conducted psychological examinations of Karen pursuant to court order for the forensic purpose of evaluating Karen's existing psychological status to assist the court in its decision-making. The examinations were not ordered for the purpose of improving Karen's suitability

for reunification with her children. Karen was not the client of either Mason or Pfaff and, hence, not within the scope of the applicable privilege statutes.

{¶ 31} Regarding the testimony of Sharon Pickel, we conclude that the trial court erred in finding that a therapist-client relationship did not exist between Nye and Pickel. It is true that Pickel considered her primary clients to be the Nye daughters, not Karen, although Pickel did acknowledge that she had a "therapeutic relationship" with the entire family. Ultimately, though, the goal of Karen's participation in therapy sessions with Pickel as ordered in the court-approved reunification plan was to receive treatment in order to change her own behavior and to develop a healthy and constructive relationship with her children. Those sessions were not merely evaluative or confined to the forensic purpose of providing the court with information to assist it in reaching decisions pending before it. The relevant testimony of the FCCS caseworker follows:

{¶ 32} "Q: Specifically what on the case plan [relative to the Nye sisters] hasn't mother done?

{¶ 33} "A: The counseling is the biggest issue. It's—the case plan asked for her to follow all recommendations with regards to the counseling. And she had not done that. It—her attendance has been sporadic. Sharon Pickel has gone out of her way to include mom. Mom was concerned at first that the girls were going to counseling with Robert and not involving her. Sharon accommodated that request. In fact made it on—the sessions on the same day that mom would be in town so she could be incorporated in the counseling. She hasn't been to counseling since this whole court thing has started again. *I don't know why that the therapeutic relationship between her and Sharon has been severed.* I'm not sure as to what her reason is for that." (Emphasis added.)

{¶ 34} Because Karen's sessions with Pickel were treatment-focused, she is properly deemed a client of Pickel for purposes of former R.C. 2317.02(G)(1), and any confidential communications made by Karen to Pickel in the family counseling sessions fell within the scope of the statutory privilege. A contrary holding would directly contradict the law established in *Wieland.*

{¶ 35} Pickel's testimony was, however, wholly consistent with testimony provided by Mason and Pfaff, whose testimony was not subject to statutory privilege, and of Karen herself. Accordingly, no reversible error is demonstrated in the record before us, and the court of appeals did not err in affirming the trial court's judgment finding that Zachary was a dependent child and granting temporary custody to FCCS.

Judgment affirmed.

RESNICK, F.E. SWEENEY, PFEIFER, VUKOVICH, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

JOSEPH J. VUKOVICH, J., of the Seventh Appellate District, sitting for COOK, J.

Yeura R. Venters, Franklin County Public Defender, David L. Strait and Heather D. Lang, Assistant Public Defenders, for appellant.

Ronald J. O'Brien, Franklin County Prosecuting Attorney, and Katherine Press, Assistant Prosecuting Attorney, for appellee.

Michael N. Oser, guardian ad litem for Zachary Jones.