OPINION
{¶ 1} Appellant, Holly Fleischer, appeals the December 9, 2004 judgment entry of the Juvenile Division of the Lake County Court of Common Pleas, in which the trial court granted permanent custody of the minor child, Elijah Patfield ("Elijah") to appellee, the Lake County Department of Job and Family Services ("LCDJFS").
 {¶ 2} Appellant is the biological mother of Elijah, who was born on November 28, 2001. Terry Patfield ("Patfield") is Elijah's natural father. Appellee became involved in this matter on April 4, 2002, when it received emergency temporary custody after the Painesville Police Department granted it shelter care. Appellee filed a dependency complaint on April 5, 2002. An adjudication hearing was held on June 27, 2002. At the hearing, appellant and Patfield agreed that Elijah was a dependent child, and the trial court found him to be dependent pursuant to R.C.2151.04. On that same date, a dispositional hearing was held, and temporary custody remained with appellee. A case plan was submitted to the trial court and adopted. The plan addressed substance abuse, mental health, parenting, basic needs and necessary treatment goals. A further disposition was scheduled, but was continued because appellant was unable to attend as she was in a nursing home.
 {¶ 3} Appellee filed a motion for permanent custody of Elijah on March 28, 2003, pursuant to R.C. 2151.413 and R.C. 2151.415. The case was not set for a permanent custody hearing until November 7, 2003. In a judgment entry dated November 4, 2003, the trial court, on its own motion, dismissed appellee's motion for permanent custody, without prejudice, in light of the statutory time limitation provided in R.C. 2151.414. Appellee then re-filed its motion for permanent custody on November 7, 2003. A permanent custody hearing was set for January 2004. However, before the hearing, a new guardian ad litem was appointed for appellant through the Lake County Probate Court. The hearing was set for April 2004 and continued into August 2004.
 {¶ 4} In April 2002, when Elijah was four months old, his parents were unable to care for him due to mental health and substance abuse. Patfield asked for Elijah to be removed during a mental health intervention, and appellee has had custody of him since that time. At the hearing in April 2004, the trial court judge determined that Elijah was too young to understand the concept of permanent custody because he was only two and a half years old at the time, and he only speaks one-word sentences. The trial judge further indicated that appointing an attorney for Elijah would place that person in an impossible position.
 {¶ 5} The court first heard from Attorney Russell J. Meraglio ("Meraglio"), who was appointed appellant's successor guardian for her person and her estate on December 15, 1999. He collected appellant's social security and paid her rent, utilities and living expenses since appellant could not manage them on her own.
 {¶ 6} Following Meraglio's testimony, Deena Leber-George ("George"), an intake specialist and certified chemical dependency counselor with Neighboring, testified. George stated that in July 2002, appellee referred appellant to her for dual diagnosis assessment of a severe alcohol and mental illness disorder. George stated that appellant arrived at her assessment with a strong smell of alcohol on her person, and she admitted drinking seven out of the ten days prior to the assessment. On the day of the assessment, appellant stated that she had been drinking until 2:00 a.m. prior to the appointment. George indicated that appellant attempted to quit drinking while she was pregnant. George recommended that appellant enter into an intensive outpatient program because her potential for relapse was high since she was alcohol dependent and in need of hospitalization. However, appellant did not want to be treated. This information was provided to appellee pursuant to a signed release.
 {¶ 7} Dr. Farid Sabet ("Dr. Sabet") took the stand and related that he met with appellant when she was hospitalized for about one month at Laurelwood in July 2002. At that time, he diagnosed her with schizo-effective disorder, which reflects a combination of mood and thought disorder. Dr. Sabet noted appellant's poor nutrition and bruising. He had a difficult time making a clear diagnosis due to appellant's alcohol abuse. Dr. Sabet further indicated that appellant had some intervention while she was hospitalized, but he did not know whether she followed through with his recommendations. He stated that appellant needed to abstain from alcohol for her treatment to be successful.
 {¶ 8} Several officers from the Painesville Police Department testified that they responded to domestic violence calls at the home of appellant and Patfield from 2002 through 2004. They also related that appellant and Patfield had problems with alcohol and that the home was deplorable. In fact, one of the officers stated that the conditions in the home amounted to a health code violation, so he reported his concerns to appellee.
 {¶ 9} Melanie Hale ("Hale"), a supervisor with appellee, took the stand and related that appellee developed a case plan in January 2002, due to their involvement with appellant and Patfield. In April of 2002, the case plan goals were reviewed as a result of domestic discord, drinking and the living conditions. Patfield indicated that neither he nor appellant could care for Elijah. The case plan goals for appellant and Patfield were that they were to participate in a treatment program and address their mental health and substance abuse issues, attend parenting classes and continue to work with Crossroads Early Childhood Services. Both were to ensure that Elijah's basic needs would be met if he was placed in their care and that they would obtain and maintain appropriate and stable housing.
 {¶ 10} Hale related that initially both appellant and Patfield contacted Neighboring and did a drug and alcohol assessment. However, appellant told Hale that she would not follow the recommendations of Neighboring because it was a dual diagnosis place, and she did not have mental health issues. Appellant stated that she was going to have to find somewhere else to go. Appellant then completed an assessment at North Coast Center, and they recommended following the Neighboring assessment and Laurelwood recommendation.
 {¶ 11} As for parenting, appellant was advised to handle her mental health and substance abuse issues and then work in the Instant Mental Health Parenting Program. Appellant did not complete the parenting program while working with Hale.
 {¶ 12} Hale explained that appellant regularly visited with Elijah one hour one time a week. She requested an increase in her visitation, which was granted. Her visits were for one hour on Wednesday and Friday, but she missed many of her Friday visits. During the visits, Hale indicated that Elijah was so young he would sleep for a good part of the time. However, appellant would feed him, burp him and change his diaper. Hale also noted that appellant would shake him a lot because her hands would tremble and shake. According to Hale, appellant had difficulty maneuvering at times when she changed Elijah's diaper. Hale testified that Elijah was affectionate toward appellant.
 {¶ 13} Hale related that at the time Elijah was removed, she asked appellant and Patfield about possible placement with relatives. Appellant would not speak to her. Appellant was very upset and angry and would give no information about any relatives. Hale did have an opportunity to contact some relatives of appellant and Patfield by telephone and/or mail, but none expressed an interest in Elijah.
 {¶ 14} Melissa Flick ("Flick"), a substitute care supervisor for appellee, related that Elijah was a special needs child. Flick indicated that Elijah was exposed to some alcohol use by appellant during her pregnancy. She also stated that Elijah was developmentally delayed, had eating issues, and his speech was severely delayed. Flick opined that Elijah needed some sort of permanency in his life. Since Elijah had been out of the home since he was four months old, his attachment to his parents had been disrupted because he had spent more time in foster care.
 {¶ 15} According to Flick, appellant and Patfield did not fully take advantage of the visitation offered to them as they frequently canceled visits with Elijah. Appellant asked to have visits moved to Friday afternoon instead of morning because she is an insomniac, and appellee refused. Flick explained that "if the child were to be placed into the home for full time, that the parents' responsibility would be that they would need to be available to parent that child during the morning, during the afternoon, during the evening, all night long. So we felt, as an agency, that [appellant] would need to show that she would be able to make those morning visits, that she would be capable of caring for the child during that time period."
 {¶ 16} Sharon Altland ("Altland"), an early childhood supervisor with Crossroads Early Childhood Services, took the stand and related that she worked with appellant on infant mental health and parenting. At a meeting that included appellant, Altland, Hale and Sherry Jackson, Altland informed appellant that she needed to address her drug and alcohol issues and the need to maintain stable housing. Appellant told Altland she would follow-up with Pathways and Crossroads Early Childhood Services, but failed to do so.
 {¶ 17} Renee Markeiwicz ("Markeiwicz"), an occupational therapist, testified that Elijah showed a delay in fine motor, language and feedings issues. She indicated that she had been working with Elijah for two years and that he had made a lot of progress in his fine motor skills during that time. Markeiwicz explained that Elijah is functioning more in the twelve to eighteen month level in a lot of his fine motor and cognitive skills and feedings issues even though he was almost three years of age. In her opinion, Elijah "needs someone there all the time, * * * you need to keep a close eye on him. He does a lot of inappropriate play."
 {¶ 18} Donna Rudnay ("Rudnay") testified that she was appellant's case manager at Pathways. She assisted appellant with scheduling appointments, although appellant did not always keep them. She also assisted appellant with maintaining daily living skills and monitoring her mental health symptoms. Rudnay helped appellant with her grocery shopping. Rudnay stated that appellant's apartment was so dirty it was almost inhabitable. She noted that appellant smelled of alcohol during many of her visits, even when she was pregnant.
 {¶ 19} Jan Kimball ("Kimball"), a counselor and chemical dependency facilitator with North Coast Center, related that appellant was referred to her agency for a drug and alcohol assessment. Appellant completed the assessment, but according to Kimball, she did not follow through with the recommendations made.
 {¶ 20} Appellant admitted that she did not complete the case plan and did not follow any of her service providers' recommendations. Appellant also disclosed that she had an open container conviction on April 6, 2004. She indicated that she did not provide any information regarding relatives to care for Elijah. She further revealed that she missed many of the visits that occurred on Friday.
 {¶ 21} After twelve days of hearings, the trial court granted permanent custody of Elijah to appellee in a judgment entry dated December 9, 2004. It is from that entry that appellant timely filed the instant appeal and presents the following assignments of error for our review:
 {¶ 22} "[1.] The [t]rial [c]ourt erred and abused its discretion by allowing testimony and evidence of privileged communications protected under [R.C.] 2317.02 and 4732.19 to be admitted into evidence.
 {¶ 23} "[2.] The [t]rial [c]ourt erred and abused its discretion in granting the motion for permanent custody of [appellee] as it was not supported by clear and convincing evidence.
 {¶ 24} "[3.] The [t]rial [c]ourt erred and abused its discretion in granting the motion for permanent custody of [appellee] as [appellee] did not use diligence and good faith efforts for reunification."
 {¶ 25} In the first assignment of error, appellant alleges that the trial court erred when it allowed testimony and communications of privileged communications, which are protected under R.C. 2317.02 and4732.19, to be admitted into evidence. Specifically, appellant argues that R.C. 2317.02(G) provides that a professional clinical counselor, social worker or independent social worker shall not testify concerning a confidential communication received from a client in that relation or the person's advice to a client.
 {¶ 26} In In re Wieland (2000), 89 Ohio St.3d 535, the mother of alleged dependent children was ordered to submit to a substance abuse and domestic violence assessment and attend parenting classes. The Supreme Court of Ohio held that "statements made by an individual to a licensed psychologist or licensed independent social worker in the course of an examination ordered by a court for forensic purposes are not communications received `from a client in that relation,' R.C.2317.02(G)(1), and are not protected as privileged communications pursuant to R.C. 4732.19 * * *." In re Jones, 99 Ohio St.3d 203, paragraph one of the syllabus, 2003-Ohio-3182.
 {¶ 27} In Jones, 2003-Ohio-3182, at ¶ 26-27, the Supreme Court, in interpreting Wieland, stated:
 {¶ 28} "`Whenever a court orders a parent to undergo a psychiatric examination or substance abuse evaluation and treatment for purposes of a child custody case, the parent is required to submit involuntarily to the examination, evaluation and treatment. The mere fact of involuntariness, however, should not end the inquiry. Instead, an examination of the purpose and the nature of the professional help sought is also necessary.
 {¶ 29} "`In regard to a court-ordered examination or evaluation, the parent is being required to consult the expert for forensic purposes. The physician is not examining or treating the patient to alleviate medical complaints or substance addictions. Instead, the physician is performing a forensic evaluation for the purpose of helping the court to determine the best course of action. In this case, no privilege attaches. (* * *) Likewise, we conclude that when a psychiatric examination or substance evaluation is ordered by a court in a child custody case for forensic purposes, the privilege is inapplicable. However, when the parent is also required to undergo treatment, the reason underlying the psychologist-privilege applies. As previously stated, the purpose of the privilege statutes is to "create an atmosphere of confidentiality, encouraging the patient to be completely candid and open with his or her physician, thereby enabling more complete treatment." In re Miller
(1992), 63 Ohio St.3d 99, 107 * * *. Furthermore, the purpose of reunification case-plans is to reunify the parent and child by remedying the reason for the removal of the child from the home. See R.C.2151.414(E)(1). In order to meet the goal of the reunification plan, the purpose underlying the statutory privilege — effective treatment — is material and significant. In other words, if a parent is fearful that any communications with her provider will not be privileged, she may not be open and truthful during treatment, thereby undermining the effectiveness of treatment and ultimately defeating the goal of remedying the reason for the removal of the child. On the other hand, matters that do not involve communications between the provider and the patient-client, e.g., a summary of attendance, will not be protected by the privilege.'" (Parallel citation omitted.)
 {¶ 30} In the instant matter, appellant challenges the testimony of George, Altland, Kimball and Rudnay, and the trial court's failure to grant the motion in limine. Appellant executed a signed release, which permitted the release of information to appellee.
 {¶ 31} George indicated that she was an intake specialist and certified chemical dependency counselor with Neighboring. She further explained that appellant came to work with her as a result of a dual diagnosis referral from appellee in July 2002. It is our view that no privilege attaches because the counselor was performing a forensic evaluation for the purpose of helping the court determine the best course of action. Additionally, any evidence about appellant's failure to attend follow-up treatments and failure to follow-up is documentary evidence of attendance not covered by the privilege.
 {¶ 32} Altland, an early childhood supervisor with Crossroads Early Childhood Services, testified that she worked with appellant on infant mental health and appellant's own mental health. Altland informed appellant that she needed to address her drug and alcohol issues and the need to maintain stable housing. Appellant told Altland she would follow-up with Pathways and Crossroads Early Childhood Services, but failed to do so. Here, the counselor was performing a forensic evaluation to aid the court in determining the best course of action so no privilege attaches.
 {¶ 33} Kimball, a counselor and chemical dependency facilitator with North Coast Center, indicated that appellant was referred to her for a drug and alcohol assessment. Appellant completed the assessment, but did not follow through with the recommendations made. Again, no privilege attaches because the counselor performed a forensic evaluation to help the court determine the best course of action.
 {¶ 34} Lastly, Rudnay, a case manager at Pathways, testified. She assisted appellant with scheduling appointments and maintaining daily living skills and monitoring her mental health symptoms. Rudnay helped appellant with her grocery shopping. Rudnay noted that appellant smelled of alcohol during many of her visits, even when she was pregnant. Yet again, it is our position that the information provided by Rudnay was not a privileged communication because it related to appellant's attendance and participation in the programs, and it was also merely an observation.
 {¶ 35} However, even if any of the testimony would have been considered a privileged communication, it is our view that any error that occurred is, at best, harmless error. There was a lot of other testimony, which also included appellant's own statement, that demonstrated appellant's lack of desire to address her continued substance addiction and inability to maintain a stable environment. Appellant's first assignment of error is without merit.
 {¶ 36} Under appellant's second assignment of error, she claims that the trial court erred in granting permanent custody of Elijah to appellee.
 {¶ 37} Permanent custody should be granted to a petitioning agency only where the court finds, by clear and convincing evidence, that the grant of permanent custody is in the best interests of the child; and any of the following apply: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies, or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned; (3) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (4) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. R.C. 2151.414(B)(1)(a) through (d) and In re Smith, 11th Dist. No. 2002-A-0098, 2003-Ohio-800, at ¶ 8. See, also, In re Simkins, 11th Dist. No. 2002-T-0173, 2003-Ohio-1884, at ¶ 15.
 {¶ 38} In the instant matter, even though the minor may have been in the temporary custody of appellee for more than twelve of a consecutive twenty-two month period, that is not the only factor in determining whether to grant permanent custody. The best interest of the child must also be considered.
 {¶ 39} If the juvenile court decides that one of the four circumstances in R.C. 2151.414(B)(1)(a) through (d) is present, then the court continues with an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires that the trial court consider all relevant factors, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factor in R.C. 2151.414(E)(7) to (11) is applicable. Smith, supra, at ¶ 10. See, also, In re Litz (Nov. 9, 2001), 11th Dist. No. 2001-G-2367, 2001 WL 1402653, at 4.
 {¶ 40} The trial court may terminate the rights of a natural parent and grant custody of the child to the moving party only if it finds by clear and convincing evidence that one of the four factors in R.C.2151.414(B)(1)(a) applies and that it is not in the best interest of the child to be placed with the natural parent. Clear and convincing evidence is more than a mere preponderance of evidence; instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 41} It is axiomatic that both the best interest determination and the decision that the child cannot be placed with either parent focus on the child, not the parent. Miller v. Miller (1988), 37 Ohio St.3d 71, 75. A trial court cannot consider the effect that granting permanent custody will have on the parent of the child. R.C. 2151.414(C). In reviewing a trial court's determination, an appellate court may not reverse the decision unless there is a showing of an abuse of discretion. Miller at 74. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. An appellate court must consider that "`[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124. Thus, the lower court is in the best position to weigh the evidence and assess the credibility of the witnesses. Holcomb, 18 Ohio St.3d at 367.
 {¶ 42} In addition to Elijah being in the temporary custody of appellee for more than twelve of a consecutive twenty-two month period, the evidence showed that appellant had not made enough progress with her case plan to justify that a reunification could be a realistic possibility. The testimony of appellee's witnesses established that Elijah had special needs and required a stable environment with constant attention.
 {¶ 43} Additionally, based on the record before us, appellee made efforts to assist appellant and Patfield in correcting the problems that caused Elijah's removal from the home. Despite these efforts, appellant did not resolve her emotional and alcohol problems.
 {¶ 44} Furthermore, appellant has failed to show that giving permanent custody to appellee would not be in the best interest of Elijah. As previously mentioned, appellant has not substantially complied with her case plan and does not appear to be in a position to provide for her child's basic and medical needs. Our conclusion is that there was sufficient evidence presented to support the trial court's decision to grant appellee's motion for permanent custody. Hence, it is our view that the trial court did not abuse its discretion, and, thus, it was in the best interest of the child for the trial court to grant the permanent custody motion of appellee. Appellant's second assignment of error lacks merit.
 {¶ 45} For her third assignment of error, appellant posits that the trial court erred in granting appellee's motion for permanent custody as appellee did not use due diligence and good faith for reunification. Specifically, appellant alleges that R.C. 2151.419 imposes a duty on appellee to make reasonable efforts to reunite parents with their children where appellee has removed the children from their home.
 {¶ 46} R.C. 2151.419(A) requires a trial court to determine whether a children services agency that has removed a child from his or her home has "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's his home, or to make it possible for the child to return safely home." The children services agency retains the burden of proving that it has made such reasonable efforts. R.C. 2151.419(A).
 {¶ 47} The facts of this case show that appellant was incorporated into appellee's case plan after Elijah had already been removed from her custody. In order to make it possible for appellant to be reunified with Elijah, appellee ordered appellant to undergo a psychological and a substance abuse examination and to show that she possessed the willingness and resources to provide a secure and stable home for her son. In addition, appellee made all necessary referrals. Appellee facilitated visitation, provided information on services to appellant and Patfield, encouraged appellant to work on case plan goals, and made efforts in locating relatives willing to care for Elijah. Thus, we conclude that appellee made reasonable efforts to develop and preserve the parent-child relationship, and appellant's inaction caused Elijah not to be placed into her custody. Appellant's third assignment of error is meritless.
 {¶ 48} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
O'Neill, J., Rice, J., concur.