[Cite as *In re F.I.*, 2014-Ohio-2350.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: | : | JUDGES: |
| F.I. | : | |
| J.I. | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 14-CA-1 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Fairfield County
                             Juvenile Court Case Nos. 2013-AB-
                             0021 and 2013-AB-0258


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      May 29, 2014


APPEARANCES:

For Appellee:                        For Mother-Appellant:

GREGG MARX                           KRISTI R. MCANAUL
FAIRFIELD CO. PROSECUTOR             660 Hill Road N., P.O. Box 220
Zoe A. Lamberson                     Pickerington, OH 43147
Andrea K. Green
239 W. Main St., Ste. 101
Lancaster, OH 43130

*Delaney, J.*

{¶1}   Appellant J. I. ("Mother") appeals from the December 18, 2013 Entries of the Fairfield County Court of Common Pleas, Juvenile Division terminating her parental rights and granting permanent custody of F.I. (d.o.b. 6/21/2013) and J.I. (d.o.b. 2/4/2011) to Fairfield County Child Protective Services ("CPS").  Appellee is the state of Ohio.

{¶2}   This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

## FACTS AND PROCEDURAL HISTORY

{¶3}   J.I. was born on February 4, 2011 to Mother and J.D.I. ("Father"), who is deceased.  F.I. was born on June 21, 2013 to Mother and an undetermined father.

*Mother Surrenders Permanent Custody of Three Older Children*

{¶4}   Mother surrendered permanent custody of three older children prior to the births of the minor children at issue in the instant case: J.I. (d.o.b. 5/7/00), J.I. (d.o.b. 7/23/02), and J.I. (d.o.b. 12/11/03).  The three older children were initially removed by C.P.S. due to allegations of abuse and/or neglect. Mother did not contest the motions for permanent custody.

*Mother's Troubled Relationship History*

{¶5}   Mother's prior involvement with CPS was due in part to her history of relationships with sex offenders.   Mother's boyfriend at age 16 was convicted of corruption of a minor; another boyfriend was convicted of gross sexual imposition against a 3-year-old Mother babysat; and her husband ("Father") was found in possession of child pornography and was convicted of pandering sexually-oriented

matter involving a juvenile. Mother cooperated in the prosecution of Father, voluntarily gave up custody of one of their children together, and then reunited with Father, who died in 2010.

{¶6} Mother, age 30, then became involved with R.A., age 57, one of the putative fathers of F.I. (d.o.b. 6/21/2013), who knew her "all her life." R.A. was reportedly violent with Mother and one of her children. Mother also still maintains contact with her mother's boyfriend who sexually abused her from the age of 5 until the age of 13. Mother testified she forgives people and believes they can change.

*The Drano Incident and J.I.'s (d.o.b. 2/4/2011) Ongoing Medical Needs*

{¶7} Mother frequently allowed J.I. to drink Lipton's "sweet tea" because it was his favorite beverage, to the extent his front teeth became so decayed they had to be removed.

{¶8} On November 7, 2012, J.I. ingested Drano drain cleaner which Mother put in a Lipton's "sweet tea" bottle and left unattended. J.I. suffered internal and external third-degree burns and was placed on life support. His esophagus was eventually replaced and at the time of trial he was still hospitalized due to complications. J.I. faces significant ongoing medical issues; his medical care requires twice-daily dressing changes, pressure garments, and a feeding tube.

{¶9} Mother acknowledges she does not know how to provide the specific care J.I. requires. She was told scratching J.I.'s burn scars reinforces behavior that will jeopardize healing but was observed scratching scars during visitation and was redirected with difficulty. She told an evaluator she is not prepared for J.I. to come home and is afraid of injuring him further.

*Mother's Mental Health*

{¶10} Dr. Bradley Hedges testified as an expert witness about his psychological evaluation of Mother based upon her referral by CPS.  He testified his assessment of Mother is based upon the entire clinical record available to him, including evaluations compiled in 2005, 2007, and 2013 from earlier CPS referrals.  His expert opinion is Mother has difficulty meeting her own needs independently, let alone the needs of her children, because she consistently relies upon others for help in meeting those needs. The individuals Mother relies upon expose her children to a high risk of victimization. Mother requires a significant degree of intervention and intense supervision to ensure the long-term safety of her children.  Her ability to parent has not improved significantly over the time Hedges has evaluated her.  Mother's borderline intellectual functioning, maladaptive personality dynamics and history demonstrate she has consistently failed to apply her knowledge to her parenting, resulting in significant harm to her children.

*Procedural History*

{¶11} After the Drano incident, CPS sought ex parte emergency custody of J.I., which was granted on December 7, 2012 in Fairfield County Juvenile Court Case Number 2012 AB 0187.  On December 10, 2012, CPS filed a dependency complaint on behalf of J.I. under the same case number and that day J.I. was placed in temporary shelter custody.

{¶12} On January 29, 2013, Fairfield County Juvenile Court Case No.  2012 AB 0187 was dismissed without prejudice and a dependency complaint was re-filed under Case No. 2013 AB 0021.  J.I. was again placed into the temporary shelter custody of CPS.

{¶13} A case plan was developed for Mother on December 20, 2012 and filed in Case No. 2013 AB 0021 on February 5, 2013.  This case plan was later amended to include F.I. (d.o.b. 6/21/2013).  A caseworker testified at trial that Mother is in compliance with her case plan, the terms of which include compliance with mental health recommendations and compliance with criminal court orders.  Mother has participated in her case plan and has made progress but still needs mental health and parenting support.

{¶14} On March 4, 2013, Mother was convicted of one count of attempted child endangering, a felony of the fourth degree, for the Drano incident.  She was placed on felony probation for five years and is presently in compliance with the terms of her criminal probation.

{¶15} On March 28, 2013, J.I. was found to be neglected and was placed in the temporary custody of CPS and has remained in the custody of CPS since that date.

{¶16} On June 21, 2013, CPS was granted ex parte emergency custody of F.I. in Fairfield County Juvenile Court Case No. 2013 AB 153.  A dependency complaint was filed on June 24, 2013 under Case No.  2013 AB 153 and F.I. was placed in the temporary shelter custody of CPS.

{¶17} On September 19, 2013, CPS filed a motion for permanent custody of J.I. The same day, F.I.'s case under Fairfield County Juvenile Case No. 2013 AB 153 was dismissed without prejudice and a dependency complaint was filed on behalf of F.I. under Case No. 2013 AB 0258.  CPS requested the trial court consider disposition of permanent custody of F.I. to CPS and F.I. was placed in the temporary shelter care of CPS.

{¶18} Both children were placed with the same foster family and are both doing well. They have two older foster brothers. The children are "extremely bonded" with their foster family, who have demonstrated unconditional love and support for both children. The foster family has demonstrated willingness and ability to provide for J.I.'s medical needs throughout "many" procedures and daily care.

{¶19} One trial was held in both cases on November 25, 2013. The trial court filed its Entries terminating Mother's parental rights to both J.I. and F.I., placing the minor children in the permanent custody of C.P.S., on December 18, 2013.

{¶20} Mother now appeals from the trial court's Entries of December 18, 2013.

*Note on Appellate Case History*

{¶21} The two permanent custody cases were appealed under the instant single appellate case number. Mother filed two appellate briefs with separate assignments of error, and appellee moved to strike the second brief. Mother responded with a "Motion of Appellant for an Order Allowing Both Briefs to Stand under Consolidated Case Number 2014-CA-0001 or the Alternative Motion of Appellant for Leave to Plead to Consolidate Briefs." We denied the motion to strike and ruled we would allow both briefs to stand under a single case number "and will consider both underlying cases simultaneously for the purposes of merit review."

{¶22} Mother raises eight assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I. ALL TESTIMONY AND OTHER EVIDENCE RELATED TO [MOTHER'S] PRIVILEGED COMMUNICATIONS WITH DR. BRADLEY A. HEDGES AND DR. CHRISTOPHER RAY, PRIOR TO 2013 SHOULD NOT HAVE BEEN ADMISSIBLE."

{¶24} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT J.I. CANNOT BE PLACED WITH [MOTHER] WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH [MOTHER]."

{¶25} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTEREST OF J.I. FOR PERMANENT CUSTODY TO BE GRANTED TO FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES."

{¶26} "[IV.] ALL TESTIMONY AND OTHER EVIDENCE RELATED TO [MOTHER'S] PSYCHOLOGICAL EVALUATION AND INTELLIGENCE TESTING CONDUCTED BY PSYCHOLOGIST'S (*sic*) BRADLEY A. HEDGES AND ERIN DAVIS SHOULD NOT HAVE BEEN ADMISSIBLE."

{¶27} "[V.] EVEN IF THE COURT FINDS THE PSYCHOLOGICAL EVALUATION OF 2013 IS ADMISSABLE (*sic*), ALL TESTIMONY AND OTHER EVIDENCE RELATED TO [MOTHER'S] PREVIOUS PSYCHOLOGICAL EVALUATIONS AND INTELLIENCE TESTING CONDUCTED BY PSYCHOLOGIST'S

(*sic*) BRADLEY A. HEDGES AND CHRISTOPHER RAY SHOULD NOT HAVE BEEN ADMISSIBLE."

{¶28} "[VI.]  THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT F.I. CANNOT BE PLACED WITH [MOTHER] WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH [MOTHER.]

{¶29} "[VII.]  THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTEREST OF F.I. FOR PERMANENT CUSTODY TO BE GRANTED TO FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES."

{¶30} "[VIII.] THE APPELLANT WAS PREJUDICIALLY DEPRIVED OF HER OHIO CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL."

## ANALYSIS

### I., IV., V.

{¶31} Mother's first, fourth, and fifth assignments of error are related; she contends the trial court should not have considered testimony and other evidence related to psychological evaluations performed in compliance with her case plans, including those case plans in previous cases.  We disagree.

{¶32} Evidence such as that provided by Dr. Hedges in the instant case falls within an exception to the physician-patient privilege.  In *In re Wieland*, the Ohio Supreme Court held the physician-patient privilege applied to communications between a parent and a therapist in court-ordered treatment as part of a reunification plan in a

dependency and neglect proceeding.  89 Ohio St.3d 535, 2000-Ohio-233, 733 N.E.2d 1127, syllabus.  In reaction to *Wieland*, the General Assembly amended the statutory physician-patient privilege in 2000 to add section (B)(1)(b), which states in pertinent part:

> The testimonial privilege established under this division does not apply, and a physician or dentist may testify or may be compelled to testify, in any of the following circumstances:
>
> In any civil action concerning court-ordered treatment or services received by a patient, if the court-ordered treatment or services were ordered as part of a case plan journalized under section 2151.412 of the Revised Code or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151. of the Revised Code.

{¶33} Mother acknowledges the above would typically defeat a claim of privilege in a permanent custody case, but argues here the exception does not apply because no case plan applicable to F.I. (d.o.b. 6/21/2013) was in effect when the earlier evaluations Hedges took into account were performed.  She therefore concludes the information obtained in those evaluations could not be part of the comprehensive evaluation.  We find no such limitation in the statutory exception.  Hedges has personally repeatedly evaluated Mother, for past CPS referrals and due to the case plan in J.I.'s case, later amended to include F.I.  To expect a mental health professional to exclude his prior

knowledge of her history from his assessment to the court would defeat the purpose of the statutory exception altogether.

{¶34} Mother further argues the opinion of Dr. Hedges was inadmissible because it was based on a history of testing and evaluation for which Mother did not waive the physician-patient privilege. She refers to herself as a "client" of the evaluating psychologists. Mother's evaluations which resulted from CPS referrals, however, do not require waiver to be admissible. In *In re Jones,* the Ohio Supreme Court interpreted its holding in *Wieland*, supra, to specify "[a] psychological examination is considered to be for forensic purposes when it is ordered to assist the court in determining facts or making conclusions of law. Individuals interacting with a professional in such an examination are not clients of the professional for purposes of the privilege statutes." 99 Ohio St.3d 203, 2003-Ohio-3182, 790 N.E.2d 321, ¶ 13.

{¶35} We find Mother's psychological evaluations, present and past, to be forensic in nature because the examinations were for the specific purpose of determining her psychological fitness as a parent, not for the purpose of treatment in a therapeutic relationship. The past evaluations were relevant to Hedges in making a comprehensive recommendation to the trial court.

{¶36} Finally, we note even if any of the challenged communication was privileged, we find any arguable error to be harmless beyond a reasonable doubt. *In re Patfield*, 11th Dist. Lake No. 2005-L-007, 2005-Ohio-3769, ¶ 35. Mother's mental health was only one facet of the trial court's decision; as we discuss infra, absent the mental health testimony, the record is replete with clear and convincing evidence supporting the judgment of the trial court.

{¶37} Mother's first, fourth, and fifth assignments of error are overruled.

II., III., VI., VII.

{¶38} Mother argues in her second, third, sixth, and seventh assignments of error the trial court erred in granting permanent custody of J.I. and F.I. to C.P.S. We disagree.

{¶39} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477.

{¶40} If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶41} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶42} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶43} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶44} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶45} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

*R.C. 2151.414(E) Factors: Clear and Convincing Evidence*

{¶46} The trial court found J.I. and F.I. could not be placed with Mother within a reasonable time or should not be placed with Mother. If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.[1]

{¶47} The trial court found that notwithstanding the reasonable case planning and diligent efforts of CPS to assist Mother to remedy the problems that initially caused the children to be placed outside the home, Mother failed continuously and repeatedly

---

[1] With respect to F.I. (d.o.b. 6/21/2013), the trial court also found F.I. (d.o.b. 6/21/2013) could not be placed with the putative fathers within a reasonable time or should not be placed with the putative fathers within a reasonable time. The putative fathers' rights were also terminated in the underlying proceeding and are not parties to this appeal.

to substantially remedy the conditions causing the children to be placed outside of the home. R.C. 2151.414(E)(1). Mother argues she "has addressed each and every concern of [C.P.S.]." The evidence shows Mother substantially complied with the case plan requirements, but the statute provides that she substantially remedy the conditions that caused her child to be placed outside of the home. Mother has attended parenting classes and is compliant with court orders, but she is admittedly unprepared, and unwilling, to deal with J.I.'s substantial medical needs. She has not shown improvement in her parenting skills over the 13 years of CPS involvement and has exhausted all of the options; in Hedges' terms, she is doing as well as she ever will. This still exposes her children to danger. She created the conditions that led to J.I.'s severe and irreparable injuries. In the ensuing time, Mother was instructed not to scratch J.I.'s scars and not to encourage him to do so, but removed a pressure garment and was observed scratching his scars during a visit.

{¶48} The trial court also noted "[a]ny other factor the court considers relevant" pursuant to R.C. 2151.414(E)(16). The trial court did not make a finding pursuant to R.C. 2151.414(E)(11), but did note in its findings of fact Mother had her parental rights involuntarily terminated with respect to three siblings of the children.

{¶49} We find the trial court's decision is supported by the evidence presented under R.C. 2151.414(E)(1).

*Best Interests of the Minor Children*

{¶50} We next turn to the issue of best interests. We have frequently noted "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given

the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. Stark No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). The trial court determined it was in the best interest of the children to be placed in the permanent custody of C.P.S. pursuant to R.C. 2151.414(D) and we agree.

{¶51} J.I. and F.I. deserve safety and stability.  J.I. in particular has unique medical needs that require constant care and attention that Mother is not able to provide.  His foster family has been attentive to his needs throughout numerous medical procedures.  J.I. and F.I. are very bonded with their foster family, which has provided them with unconditional love and support.  We note the guardian ad litem recommended permanent custody of both children should be granted to C.P.S.

{¶52} We find the trial court did not err in finding J.I. and F.I. could not or should not be placed with Mother within a reasonable period of time and the grant of permanent custody to C.P.S. is in the children's best interest.

{¶53} Mother's second, third, sixth, and seventh assignments of error are overruled.

VIII.

{¶54} In her eighth assignment of error, Mother argues she was denied effective assistance of counsel in the permanent custody proceeding.  We disagree.

{¶55} We have recognized "ineffective assistance" claims in permanent custody appeals. See, e.g., *In re Utt Children*, 5th Dist. Stark No. 2003CA00196, 2003–Ohio–4576. Where the proceeding contemplates the loss of parents' 'essential' and 'basic'

civil rights to raise their children, " * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), quoting *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998). Our standard of review for an ineffective assistance claim is thus set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *In re Fell*, 5th Dist. Guernsey No. 05 CA 8, 2005–Ohio–5790, ¶ 11.

{¶56} To succeed on a claim of ineffectiveness, an appellant must satisfy a two-prong test. Initially, an appellant must show that trial counsel acted incompetently. See, *Strickland v. Washington*, supra, 466 U.S. at 668. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690.

{¶57} Even if an appellant shows that counsel was incompetent, the appellant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The United States Supreme Court and the Ohio Supreme

Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 538 N.E.2d 373, quoting *Strickland* at 697. Accordingly, we will direct our attention to the second prong of the *Strickland* test. *In re Huffman*, 5th Dist. Stark No.2005–CA–00107, 2005–Ohio–4725, ¶ 22.

{¶58} Mother summarily contends she received ineffective assistance of counsel because counsel failed to object to the admissibility of the psychological evaluation for the reasons discussed supra in assignments of error I., IV., and V.  In light of our disposition of those assignments of error, we conclude counsel did not err in failing to object to the admissibility of the evaluation.

{¶59} Mother's eighth assignment of error is overruled.

**CONCLUSION**

{¶60} Mother's eight assignments of error are overruled and the judgment of the Fairfield County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J. and

Gwin, P.J.

Farmer, J., concur.